The next case is United States of America v. Waqar. Morning, counsel. Good morning, your honors. My name is Jonathan Edelstein. I represent the defendant appellant, Muhammad Waqar. There are a number of issues in this case, but I'd like to focus on two in particular. Whether the district court had an obligation to conduct a competency hearing and whether the jury should have been instructed in accordance with the D.C. Circuit case U.S. v. Haidt. On the issue of competency, it's undisputed that there were a series of court appearances in which the district court's observations and colloquies with Mr. Waqar raised some serious doubts in the court's mind about whether Mr. Waqar understood the nature of the charges and the trial process. Dr. Barty and Dr. Termini's report indicated that, although, as the government says, he was functional in basic daily tasks, his intelligence was extremely low. He had deficits in his cognition and understanding. Even the defense counsel, who initially stated that he thought Mr. Waqar was competent, ultimately said he wasn't sure after further discussion with the district court. Now, the district court called for a final report. You know, up to this point, the district court's actions were, in the words of this court in Ehrenberg, entirely appropriate. But the conclusions in the final report were unchanged from the ones that had aroused the district judge's doubts in the first place. There really wasn't anything in the record that would dispel the original qualms that the district court had regarding... Excuse me, Mr. Edelstein, did the experts retained by the defendant state that the defendant was incompetent? Your Honor, it wasn't a competency evaluation. They didn't state either that he was competent or that he was incompetent. It appears that their report was directed more in the nature of mitigation, that they were looking for reasons why he might not have understood the full degree of wrongness of his conduct and why he might have a diminished criminal responsibility for his actions. They weren't really looking at the questions of competency, namely whether he understood the proceedings and or whether he was able to assist in his defense. So at that point, are you saying that the judge should have required that they go back and make that kind of evaluation? Is that basically what you're looking for? That is what I believe the district court should have done under 4241 and under the Quinteri case and its progeny, where the Quinteri case sets a relatively low standard that an evaluation has to be ordered if the district court has reasonable cause to believe that the judge may be incompetent. And certainly in this case, the district court, I think, was very clear that there were matters in the record that called Mr. Wachar's competence into question. Well, that was true as of a particular moment in the course of the proceedings, right? Then there was this examination. There were further interactions in court with the district judge, correct? Correct. But the district court based its conclusions in part on a preliminary examination and report by these same doctors. And the final report, the conclusions and the findings were really unchanged. So the final report didn't dispel the reasons why the district court had qualms. And I would submit that on this record that a further competency evaluation and hearing should have been held under Quinteri and Ehrenberg, as well as under the Seventh Circuit's decision in Graves, which I submit is very on point to this case in terms of how cognitive deficits interact with the requirement to hold a competency hearing. Suppose we sent the case back on a kind of Jacobson remand and asked the district court whether it still had qualms as of the time of the trial. Would that be satisfactory? Then the judge could say yes or no and could explain whether he had continued reservations and on reflection maybe he should have had a hearing or explain that he did not. Well, I believe that really would be incorporated within the remedy that this was a remand asking the district court to determine whether the defendant's competency could be retrospectively determined as of the time of trial. That was part of the remedy ordered in Ehrenberg and I think that would encompass what Your Honor describes as a Jacobson remand. Oh, I see. So what you're asking... Okay, I understand what you're asking for. Thank you. Yes. And I have about a minute and three quarters so I'd like to talk a bit about the Height case. The district court denied the request to instruct in accordance with Height on the basis that Height was inconsistent with this court's decision in Gagliardi. But Height, I believe as the briefs show, is entirely compatible with Gagliardi. Well, Mr. Edelstein, it may be compatible but I'm not sure it's right. At least, I shouldn't say that because I think that the District of Columbia Circuit was addressing a somewhat different issue in a somewhat different context. But to the extent that you're saying that persuade requires some finding, in effect, that the person was reluctant, I don't know if that's right. We said persuade means what it normally means. If I am a supporter of a particular political candidate and I urge you to go to the polls and vote for that candidate, do I have to think that maybe you're on the opposition side? Well, actually, Judge, speaking as someone who has not done doors in quite a few elections, campaigns generally distinguish between base turnout and persuasion. Oh, I'm sure they do. But persuasion does relate to the trying to persuade people. Okay, suppose I offer you a bribe. Suppose I think maybe you're not going to go. At a minimum, I'll come and drive you to the polls because I think you are a supporter of my candidate. And at a maximum, maybe I'll corruptly offer you money to make sure you show up or to provide an extra inducement. If I provide that inducement to someone who's already inclined in favor of my candidate, that wouldn't be an inducement. That wouldn't come under the meaning of induce. Well, but that inducement is being offered because apparently you sense some sort of reluctance on my part to come to the polls. That you believe this extra bit of... Just a certain indifference. Or I think you're going to go, but I want to make sure. Why do I need to have to overbear your will? The statute says if I attempt to persuade or to induce, that's a crime. Well, it's overcome or transform the will and from indifference to acquiescence or from indifference to performance would be transforming the will. This court acknowledged in Gagliardi that asking for or discussing sex with a minor is not a crime under this statute. That there has to be this added element of persuasion, inducement... How about asking over several days and numerous conversations? Well, maybe a jury would find that that rises to the level. Maybe a jury would find that, oh yes, this is not mere discussion. This period was... Doing this over such a period of time is engineered to transform their will. I mean, it's entirely possible, as we've said in the briefs, that a properly instructed jury could have convicted Mr. Waqar. But I believe that they should have received this instruction on what the difference is between asking and persuasion. And that if they had received that instruction, it's not a foregone conclusion that they would have convicted him. That it may be that if there's a retrial and if this instruction is given, they'll convict him. But he is entitled to a trial at which the proper meaning of the statutory terms, and even more importantly, the distinction between what is a crime and what's not, is conveyed to the jury in these simple, easily explained terms that the Haidt case required. I'm well into my rebuttal time at this point, so I will reserve. Thank you, counsel. We'll hear from the government. Thank you. May it please the court. My name is Daniel Nesson for the United States. I'm an assistant U.S. attorney in the Southern District of New York, and I represent the United States in this appeal, as I did in the district court. I'll first start with counsel's arguments concerning the competency evaluation and whether Judge Stein should have sua sponte ordered a competency evaluation. There are three main points I'd like to highlight here. But before I do, I'd like to correct a mischaracterization. On March 14th, when Judge Stein was considering the preliminary conclusions of the forensic psychiatrist, that was not based on a draft report. That was based on a two-page letter from the psychiatrist explaining that the report was that their evaluation was ongoing. It noted that the defendant may suffer from cognitive issues, but it did not include the factual material, the more developed evaluation and explanation of testing performed that was included in the 12-page evaluation that was later submitted to Judge Stein. So I just want to clarify that one point. It was not the same corpus of information that was being considered. Actually, help me. Help me. Remind me. Help me understand how we got to a 10-year minimum mandatory in this case. Your Honor, that is the punishment that Congress has enacted for this conduct. That's the crime the defendant was charged with, and by exercising his right to go to trial, he exposed himself to that mandatory minimum. The government was prepared at many points throughout the proceeding, including on the eve of trial or even in the midst of trial, to offer a plea to a different crime, which would carry a lower mandatory minimum punishment. So is this not evidence of absence of corpus mentis? No, Your Honor. I don't believe it is. The defendant exercised his right to trial, as is his right. There's no indication, as Judge Stein concluded in determining that competency hearing was not necessary, to believe that he couldn't consult with his attorney, couldn't consider the plea offer. Indeed, many times in court, both the defendant and his attorney, I explained that they had discussed the plea, discussed the evidence, discussed the case, discussed the possible sentencing exposure. And as the defense counsel noted, the defendant was also concerned about collateral consequences. Going back to Pakistan, right? Yes, Your Honor. The defendant is a citizen of Pakistan. But on September 10th, defense counsel noted, or I believe actually it might have been September 10th, Your Honor. I apologize. It was April 30th, and that's 113 and 114 in the record. He stated the defendant would rather, you know, go to trial and hope for an acquittal than plead guilty. And that's purely within the defendant's rights and does not suggest that he's incompetent. We may disagree with that decision, as Judge Stein did. And as, you know, the government, by re-extending that offer, you know, believed that a different resolution was possible. But that does not mean he was incompetent to make that decision. No, it means that the government decided that five years was enough punishment for the crime. But to satisfy society's objectives. But that five more years was required because he went to trial. Your Honor, the defendant went to trial on the charge and the indictment. The charge of the indictment of attempted child enticement is what the defendant committed and what he was charged with and what he was tried on. The lesser charge was a plea offer, which was attempted receipt of child pornography, which is a very different charge and would require different facts and, you know, would require an allocution by the defendant as to those facts. So it's not that we opted not to supersede on a lesser charge. We went to trial on, you know, the crime that he was arrested on and that he was charged with. So are you aware that in the report from the two doctors, they thought that this defendant could be a functioning, well-functioning citizen of this country with therapy and counseling? Were you aware of that? Yes, Your Honor. So that seems like such a waste of a human being. Instead of giving him the therapy and counseling to give him 10 years in jail and then deport him. Yes, Your Honor. The 10-year mandatory minimum penalty is set in place by Congress, as are the consequences of his conviction there. The question about the proper resolution was considered at multiple levels of our office. We have a three-member mitigation committee that focuses specifically on... for the first time, really, in this case. It is a function of the U.S. Attorney's Office. Tell me about it. Yes, Your Honor. Well, the office has an established mitigation process for a number of offenses. But specifically for crimes against children and related sex offenses, there's a focused mitigation committee that includes one of the chiefs of the General Crimes Unit and two senior AUSAs with a particular focus on these types of crimes. And this panel sits over all mitigation submissions by similar cases. In this case, the defendant made a written submission to the mitigation committee. The mitigation committee rendered its decision that a different plea would be extended. Defense counsel appealed... Did the mitigation committee consider that there was no actual victim here? Yes, Your Honor. That was known to the mitigation committee. And the mitigation committee was considered... Of course, the defendant's personal circumstances was taken into consideration. But as was the spectrum of these cases that the office sees, the conduct in question, and the proportional positioning of this case within that range of cases. And I take it, Mr. Nassim, it was the mitigation committee that approved the lesser plea offer that was made? Right? I mean, it's not as if the office's position was, it's 10 years or nothing. I mean, 10 years in your case. Exactly right. Yeah. If the highly specialized, really smart people in your office, of course, like yourself, believe that five years was appropriate, then how can 10 years be appropriate? How can you believe 10 years is appropriate if this specialized body concluded five years was appropriate? I don't believe that what happened here is passing judgment on the propriety of that punishment. It's simply the case that that is a punishment. I'm just asking you a question, Mr. Nassim. Yeah, I believe that there can be multiple appropriate outcomes. And while we believe the lesser outcome would have been appropriate. You believe the lesser outcome would have been acceptable in exchange for a plea? I mean, this is the nature of plea bargaining is really what your answer is, right? Yes, Your Honor. What ordinarily happens in these cases is the defense counsel presents mitigating material in an effort to get a desirable agreed upon resolution rather than going to trial. But in this case, even though there was a somewhat mitigated offer, the defendant chose to go to trial. I mean, I often, I do find this institutionally in general, somewhat problematic that we have a sort of acknowledgement that a lesser penalty would do. But the only way you get it is by giving up your rights. But I think your position is that is the nature of the system. Yes, Your Honor. And the nature of the plea is also a measure of acceptance of responsibility, which is another factor that differentiates the two possible outcomes. Um, but turning back to the competency question very briefly. Your position at the end of the day is that the trial penalty is just a cost, is just a transaction cost. It's a cost of doing business. No, Your Honor. That's not, that's not my position. Why not? Seems to me embedded in what you've just told us. Um, this is, um, this, the defendant made the, I guess that's his option of proceeding to trial. Um, and, and this is not a case where there was a superseder that added more serious charges, or a fundamental change in the government's proof. This is a case where, where the defendant went to trial on the count that he'd been charged with from day one. Um, Your Honor. And as to, um, the competency question, um, I see my time is almost up. You can finish your sentence, certainly. Unless the panel has any additional questions, uh, we'll rest on our submission. Thank you. Thank you, counsel. Mr. Edelstein, you've retained three minutes for rebuttal. I thought I read in the record that Mr. Walker's wife had sought, um, to, um, citizenship for him. What happened with that? I am not a hundred percent certain, Judge. I can try to find that out from his wife. Um, I haven't been involved with the immigration ends of this case. I believe that it may have been interrupted by this case. Um, but I, but I can't say that for a fact, Your Honor. So don't, don't take that as a fact. He did have an immigration attorney advising him, didn't he? Uh, yes, he did. That's, that's my recollection. Uh, just very briefly to touch on a couple of points that counsel made in, um, the opposition. I think that the whole issue of whether the defendant chose to plead guilty rather than go to trial is really, um, brings us back to the question of whether he understood what plea bargaining is and understood what the consequences of going to trial were. And that brings us back to the colloquy in which he couldn't really distinguish between a statutory minimum and a maximum, that he couldn't really explain what plea bargaining is, that he couldn't explain a great deal about the nature of the charges other than that they were texting with somebody younger. That, yes, I mean, we agree he made a choice. But the question is, was this a competent choice? And were the safeguards of section 4241 observed to ensure that this was a competent choice? Mr. Adelson, excuse me, Mr. Adelson, what happens to him if he's found incompetent? If he's found incompetent? Yes. Then, um, I believe there would be a procedure as to whether he might, um, whether there might be any ways in which he could be made competent. And if he can't be made competent, then I would believe the charges would have to be dismissed. And would there be, um, uh, would he be exposed to some kind of civil, uh, uh, commitment? Uh, it depends on what the nature of his impairment is. I mean, here we're talking about cognitive deficits as opposed to mental illness. I don't, I mean, again, I'm not an expert in this area of law and what can get you civilly committed and what, what can't. Well, has he been, has he been advised as to these possibilities? I mean, in terms of this appeal, uh, is, uh, well, I guess I'm not going to ask you anything about what you've advised him or not advised him. Uh, but it seems to me it would behoove counsel to become sufficiently expert to know, uh, what the, uh, consequences of, of this would be and whether, uh, he's better off, uh, competent or incompetent, wouldn't it? Well, I, as, as I was saying that these are cognitive deficits at issue here rather than psychosis. So I don't see civil commitment as being a, a major possibility here. And I would, I mean, if I were in his position, I might even prefer civil commitment to 10 years in prison followed by deportation. But certainly, look, um, Mr. George and I can have that conversation with him and we can determine whether or not he wants to withdraw the appeal. I imagine that he would not, but we can certainly have that conversation with him and report back to the court if the court wishes us to do so. I don't know that you need to report. I assume that, uh, counsel have these conversations with clients and the clients make such a decision. If that hasn't happened, uh, then I think you should reflect on whether that's something appropriate for you to do. I don't know that we need a report back if the appeal isn't withdrawn. I assume, uh, that the client has been properly advised and decided to proceed with it. Uh, but I just want to make sure that you're aware, uh, of, of the risks involved and that, uh, the client has been advised of these things, uh, and at least to the extent that he's competent now because of course today is different than when the trial happened. Uh, if he's, uh, competent to make a decision whether to pursue the appeal or not, that he's been properly advised and made an intelligent and well-advised decision. But that's, that's, uh, just, uh, uh, I mean, I think that's part of your responsibilities. Uh, I don't know that we need a report, uh, as to what the result of any such conversation is. If the appeal stays in place, I assume that the conversation has been had and the client has decided to proceed with the appeal. I mean, I, I, if this were a case involving psychosis, we certainly would have had that conversation prior to now, but with cognitive deficits, I don't see that as a realistic possibility, but we certainly will have this conversation. We will convey your honor's concerns to the client. It's not my concern. It's not my concern. It's a question of what you believe is appropriate or not appropriate to discuss with your client. Uh, I'm raising the issue. It's your decision. What is, uh, uh, your professional responsibility in the circumstance? Uh, and if you decide that such a conversation is appropriate, I assume you will have it. Uh, and unless we hear to the contrary, uh, you know, an appeal has been filed and, uh, it's our job to adjudicate it. Okay. Well, with that, your honors, if the court has no further questions, I'm out of time. I'll rest on the briefs. Thank you, counsel. Thank you both. I see both. I'm sorry. Judge Parker, did you want to ask a question? No, no. Thank you very much. Thank you. The next case we'll, we'll reserve to see.